In Re: Return of the Mercer County Tax Claim Bureau of the Tax Sale held September 14, 1981 etc. Quality Home Improvement Company, Appellant.

40

Argued March 3, 1983, before Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*P. Raymond Bartholomew, Cusick, Madden, Joyce and McKay,* for appellant.

*Thomas M. Miller,* for appellee, Mercer County Tax Claim Bureau.

*Andrew M. Miller,* for appellee, Deforest Development Company.

OPINION BY JUDGE ROGERS, May 3, 1983:

Quality Home Improvement Company has appealed from an order of the Mercer County Court of Common Pleas confirming a sale conducted by the county Tax Claim Bureau of its property for delinquent local real estate taxes. The governing statute is The Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, No. 542, *as amended,* 72 P.S. §§5860.101-5960.703.

The appellant's exceptions to the sale were heard and decided by the Honorable JOHN Q. STRANAHAN who made the following findings of fact.

1. Arnold M[e]yers[1] resides at 126 South Rhodes Avenue, Niles, Ohio, and is the sole stockholder of Quality Home Improvement Company.

2. The Company had title to two lots on Thornton Avenue, Sharon, Pennsylvania. One lot has a house on it and the other lot is vacant.

3. The house is worth $26,000.00 and is rented for $175.00 a month. There are no liens or mortgages on the property.

4. From the time the property was acquired in 1970 and through 1978, Quality Home Improvement Company had paid the taxes on the two lots. The taxes were not paid for 1979-80.

5. A notice of tax sale dated July 14, 1981 for each lot was received by Quality Home Im-

---

[1] In the record the name is spelled Arnold Meyers or Arnold Myers and in the case of one document both ways. The objections to the tax sale are signed Arnold Meyers and we will use this spelling throughout the opinion.

42

provement Company. This notice complied with 72 P.S. 5860.602. The notices indicated that the properties were being sold for 1979 taxes and that the sale could be stayed, at the option of the Bureau, if the owner entered into an agreement with the Bureau to pay the taxes in installments. The notice also indicated that payment of the amount of 1979 taxes ($692.36 and 107.92) would remove the property from sale, if paid before posting and advertising. The notice also indicated that no personal checks for 1979 payments would be accepted after July 1, 1981. Other information was contained in the notices including the date, time and place of sale.

6. On July 13, 1981, Quality Home Improvement Company sent a personal check for $675.51 for taxes to the Tax Claim Bureau in Mercer. No information was attached indicating the location of the property involved.

7. The Tax Claim Bureau wrote Mr. M[e]yers and inquired where the property was located and Mr. M[e]yers telephoned the Bureau and informed them that the property was at 440 Thornton Avenue, Sharon, Pennsylvania.

8. On July 24, 1981, the Bureau returned the check and indicated the taxes owing for 1979 were $810.26 if paid by July 31, 1981. The Bureau also indicated that the 1980 taxes could not be paid until the 1979 taxes were paid.

9. The tenant of the properties sent Mr. M[e]yers a notice posted on the premises indicating that the lots were sold for taxes on September 21, 1981.

10. Mr. M[e]yers called the Bureau after September 21, 1981 and was informed the properties were sold for taxes.

11. Other than reference being made to an agreement [in the notice of tax sales]; no information was given Quality Home Improvements Company concerning the 25% provision of 72 P.S. 5860.603.

12. The amount of taxes due for 1979-1980 and 1981 were (a) house and lot, $1833.81; (b) vacant lot, $299.56. The amount of taxes due for 1979 was (a) house and lot, $692.36; (b) vacant lot $107.92.

The appellant states three questions: (1) Whether what it describes as the "confusing nature" of the communications between Mr. Meyers and the bureau rendered confirmation of the sale inequitable, (2) whether "it was unjust" for the lower court to confirm the sale in view of the "bureau's refusal to take steps to stay the sale after having received an amount in excess of 25% due on all tax claims," and (3) whether Section 603 of The Real Estate Tax Sale Law, 72 P.S. §5860.603 is unconstitutional because it permits the bureau to discriminate at its will between persons whom it accepts or rejects as persons with whom it will enter into an agreement for the payment of delinquent taxes by installments.

The second and third questions are clearly without merit. Section 603 provides:

Any owner . . . may, at the option of the bureau, prior to . . . sale, enter into an agreement, . . . with the bureau to stay the sale . . . upon the payment of . . . (25%) of the amount due . . . and agreeing therein to pay the balance . . . in . . . installments. . . .

The notices of the tax sale sent to the appellant contain the following "the sale of any property may, at the option of the Bureau, be stayed if the owner ... enters into an agreement ... to pay the taxes in installments. ..."

Mr. Meyers never asked the bureau to enter into an agreement for installment payments. He testified that his check for $675.51 was sent to pay the taxes; and Judge STRANAHAN found that the check was returned by the bureau with a note informing Mr. Meyers that the amount actually due for the taxes was $810.26. We agree with the hearing judge that the bureau, having received from the taxpayer a check for the delinquent taxes in an amount less than the amount due, having returned the check with a statement of the amount actually due, and having sent tax sale notices which included information as to the availability of agreements to pay the taxes in installments, was not under the further obligation of urging the taxpayer to pay his taxes by the installment method.

The appellant attacks Section 603 on equal protection ground, contending that the Legislature's grant to the bureau of the option to enter into insallment agreements confers on the bureau the power invidiously to discriminate among those whose offers to enter into agreements it may either accept or reject. The difficulty with the appellant's thesis is that it never asked to enter into an installment agreement and was never rejected. In considering constitutional attacks on statutes, courts deal not with abstract propositions but only with actual conditions which affect the complainant and affect him by reason of the alleged defect. *Home Life Insurance Co. of America v. Board of Adjustment*, 393 Pa. 447, 143 A.2d 21 (1958).

The appellant's principal argument is that the bureau's actions were confusing to its owner. Mr. Mey-

ers' assertion of confusion is grounded principally upon his testimony that the bureau failed to enclose his check for $675.51 with its letter of July 24, 1981 as that letter stated; and that at some later time he telephoned the bureau and was told by some unnamed person that the matter would be looked into. Unfortunately Judge Stranahan found as a fact based on the testimony of bureau personnel that the check was indeed returned in the letter of July 24, 1981; and did not find Mr. Meyers made the later call.

The appellant's case essentially is that, having sent a check for what it thought was the amount of taxes owed, the onus was upon the bureau to assure that the property was not sold. However, the crucial facts— that the check was returned to Mr. Meyers with a statement of what was in fact owed and that he did nothing further to save the property from the sale—are against the appellant; as is also Mr. Meyers' admitted failure to ''pay attention to'' the notices sent to him July 14, 1981 of the sale conducted two months later.

Order affirmed.

ORDER

AND Now, this 3rd day of May, 1983, the order of the Court of Common Pleas of Mercer County in the above-captioned matter is hereby affirmed.