Linda REILLY and Valerie
White, Appellants

v.

SUSQUEHANNA COUNTY TAX
CLAIM BUREAU.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 25, 2006.
Decided Aug. 1, 2006.

Armand E. Olivetti, Jr., Scranton, for appellants.

Michael J. Giangrieco, Montrose, for appellee.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

This Court issued an opinion on March 30, 2006 affirming an order of the Court of Common Pleas of Susquehanna County. Linda Reilly and her sister Valerie White applied for reconsideration of the Court's decision, and the Court by order of May 25, 2006 granted reconsideration and

thereafter withdrew the previously filed opinion. This opinion is issued upon reconsideration of the case, which involved an appeal from the order of the trial court denying the petition filed by White and Reilly to set aside the tax claim sale of property they owned as tenants in common in Lenox Township, Susquehanna County. The questions presented upon reconsideration are whether White and Reilly met their burden of proof to set aside the tax sale and whether the Susquehanna County Tax Claim Bureau (Tax Claim Bureau) denied them due process of law.

The trial court found that real estate taxes were not paid for the subject property for the years 2001 and 2002, and the Tax Claim Bureau scheduled the property for tax sale on September 20, 2004. There is no dispute that all proper notice of the sale was provided. The trial court indicated that White's counsel's notes stated that his office called the Tax Claim Bureau in August 2004 to request an installment plan, as provided in Section 603 of the Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S § 5860.603, but that the request was denied. No payment of any amount of taxes due was tendered before the sale on September 20, 2004, and the property was sold on that date. White, through her attorney and in person, contacted the Tax Claim Bureau on the date of sale and inquired about an installment payment plan. Pursuant to an internal policy, the Tax Claim Bureau exercises the option to offer a payment plan only where the owner is living in the property set for tax sale. The Tax Claim Bureau denied the request because neither White nor Reilly lived on the property.

In addition, the Tax Claim Bureau recognized the history of property tax delinquency. In 2002 White and Reilly paid delinquent taxes for 2000 on the day of an upset sale in order to avoid losing the property. Another upset sale was scheduled in 2003 for 2001 and 2002 taxes, which was set aside by the trial court on the basis of incorrect notice. The delinquent taxes, however, were not paid. In November 2004 the Tax Claim Bureau received a check from White for the 2001 taxes, but it was returned as the property had been sold. The petition to set aside the tax sale was filed on October 19, 2004, and White and Catherine Benedict, Director of the Tax Claim Bureau, testified at a hearing on April 14, 2005.

Benedict testified repeatedly that it is her department's policy not to give a payment plan when property is not owner occupied. She stated that this policy was communicated to White in writing in 2002 in regard to the 2000 taxes. The billing form states that a taxpayer may request a payment plan, and Benedict stated that when such a request was made the policy was explained. She recalled informing White's counsel in August 2004 that no payment plan would be allowed and that full payment of the taxes for 2001 and 2002 would be required to avoid the sale. Benedict said that her office had never had a situation where a co-tenant offered to pay his or her share of taxes due to prevent sale of that person's interest, including in this case. Her office had no specific policy on the matter.

White testified that she resides in Williamsport and, since August 8, 2004, at the property on the weekends. In March 2004 White had an application for Social Security Disability benefits pending based upon a depressive disorder resulting from a hysterectomy in 2001. She had minimal personal earnings of $168 per week and some rental income from the property, which she stated was escrowed for taxes; by August 2004 she had no income. The Social Security claim was approved, and

White received a substantial payment for past-due benefits in October or November 2004, from which she attempted to make a payment of $2400 for the taxes. The trial court denied the petition on April 18, 2005.

Section 603 of the Tax Sale Law provides in part:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment.

In its opinion on the statement of matters complained of on appeal, the trial court first noted that Section 603 clearly states that a tax claim bureau has the option to establish a payment plan for an owner. The court referred to the history of failure to pay taxes here resulting in delinquent taxes from 2001, 2002 and 2003. Neither White nor her attorney produced any payment before the September 2004 tax sale. The court found in that pattern of serial delinquency an unwillingness to pay taxes owed and sufficient grounds for the Tax Claim Bureau not to establish a payment plan. Further, because the statute requires payment of at least twenty-five percent of the outstanding taxes before sale, and White did not have sufficient funds at the time, the court found that the Tax Claim Bureau acted within its sound discretion.

Regarding White's assertion that the Tax Claim Bureau had an affirmative duty to advise White of the option to enter into an installment payment plan, the trial court stated that the record indicated that White was aware of such an option. Counsel made a request on her behalf in August, and it was denied. Also, she admitted that she did not have funds to pay the twenty-five percent of taxes due before the sale, and the Tax Claim Bureau's internal policy regarding occupying owners was not triggered because White admitted that she stayed at the property only on weekends. The court rejected White's assertion that the Tax Sale Law puts a lien creditor in a better position than an out-of-possession owner in regard to installment payments. The issue was not addressed as it was not raised earlier.

 The trial court also addressed the assertion that the Tax Claim Bureau erred by denying White a right under Section 12 of the Local Tax Collection Law, Act of May 25, 1945, P.L. 1050, *as amended*, 72 P.S. § 5511.12, which provides:

> Any joint tenant, tenant in common, or coparcener of real property shall have the right to pay his proportionate part of the amount of taxes due thereon. It shall be the duty of the tax collector to receive and receipt for the same. The interest of any such joint tenant, tenant in common, or coparcener, shall not be affected by any proceeding or sale to enforce payment of taxes on the other interests in said land.

The court noted that White never asked to exercise that option; further, as had already been stated, the uncontroverted rec-

ord of White's own admission was that she did not have money at the time of sale to satisfy her portion of the taxes.[1]

█ White and Reilly first argue that they met their burden of proof because White's unchallenged testimony showed that she resided on the property on weekends, that she personally attempted to work out a payment schedule with the Tax Claim Bureau and instructed her counsel to do the same, that her personal circumstances prevented her from making a lump-sum payment of her pro rata share of the taxes and that her efforts to do so were rebuffed because of the unpublished policy. They assert that they established a bona fide effort to pay delinquent taxes that was frustrated by the Tax Claim Bureau's policy of requiring full payment without consideration of hardship or other extenuating circumstances and, therefore, that the burden shifted to the agency to justify its conduct.

Second, as to whether the Tax Claim Bureau denied due process of law, White and Reilly note that it does not have a policy for apportioning tax liability among co-tenants. They assert that a partial payment was not tendered because the Tax Claim Bureau had stated unequivocally that it would accept only payment in full. They argue that Section 603 of the Tax Sale Law does not set forth standards for a tax claim bureau's exercise of its discretion but that other sections raise "red flags" as triggers for review, including owner-occupied property under Section 601(a)(3), 72 P.S. § 5860.601(a)(3) (relating to date of sale and providing that no owner occupied property may be sold unless the tax claim bureau has given the owner occupant written notice at least ten days before the actual sale by personal service), and extenuating circumstances such as illness or prolonged unemployment under Section 503.1, added by Section 5 of the Act of December 22, 1993, P.L. 525, 72 P.S. § 5860.503a (providing that if county commissioners have exercised statutory authority to enact legislation to extend period for discharge by up to twelve months then tax claim bureau may determine that tax claims constitute a severe hardship caused by extenuating circumstances beyond taxpayer's control and may grant an extension if there is a reasonable probability of ability to meet the indebtedness).

Referring to assertions made in White's testimony, White and Reilly state that the facts show that she had no income other than small personal earnings and rental income from the subject property until August 2004. She eventually received a favorable determination from the Social Security Administration, and she used the back payment of benefits to attempt to pay her share of the taxes. They contend that the Tax Claim Bureau had an affirmative duty to advise residential property owners of the option to enter into installment agreements, citing *York v. Roach,* 163 Pa. Cmwlth. 58, 639 A.2d 1291 (1994), and *Darden v. Montgomery County Tax Claim Bureau,* 157 Pa.Cmwlth. 357, 629 A.2d 321 (1993). Further, it had a corollary obligation to inquire into areas of eligibility before denying participation in an installment payment plan. Moreover, neither Section 603 nor cases limit the right to installment payments to owner occupiers, and if the statute or the policy implementing it limits participation to owner occupiers then it irrationally discriminates against persons such as Reilly and White.

*Darden v. Montgomery County Tax Claim Bureau,* 157 Pa.Cmwlth. 357, 629 A.2d 321 (1993).

---

1. The Court's review is limited to determining whether the trial court abused its discretion, rendered a decision without supporting evidence or clearly erred as a matter of law.

■ White and Reilly argue that a co-tenant has a right to pay her proportionate part of the amount of taxes due. By requiring payment in full, the Tax Claim Bureau effectively precluded Reilly from paying her share because White did not have sufficient funds. They cite *Bednar v. Bednar*, 455 Pa.Super. 487, 688 A.2d 1200 (1997), for the proposition that a co-tenant who pays the pro rata share of taxes of a co-tenant has no right of contribution or indemnity because there is no legal obligation to make the payment. The Tax Claim Bureau does not have a policy that implements the right of a co-tenant to pay her pro rata share, and had it made inquiry to evaluate the basis for the request for a payment plan Reilly might have avoided the sale by tendering a pro rata payment. The Tax Claim Bureau responds that the strict provisions of tax laws are meant to protect local governments against willful, persistent and longstanding delinquents. *Ross Appeal*, 366 Pa. 100, 76 A.2d 749 (1950). Under Section 603 of the Tax Sale Law, an owner may, at the option of the tax claim bureau, enter into a written agreement to stay a sale by paying twenty-five percent of the taxes owed. The trial court found and the record reflects that no payment was tendered.

In *York* the property owner tendered an amount in excess of twenty-five percent of the back taxes due, which the tax claim bureau accepted and applied to back taxes but did not inform the owners that they qualified for a stay of the tax sale under Section 603 of the Tax Sale Law. This Court held that the tax claim bureau had an affirmative duty to advise the owner of the option to enter into an installment agreement. The Tax Claim Bureau here notes that in *Appeal of Quality Home Improvement Co.*, 74 Pa.Cmwlth. 39, 458 A.2d 1074 (1983), where the tax claim bureau returned a check for less than the total but more than twenty-five percent of

the taxes due, the Court held that the bureau was under no further obligation to urge the taxpayer to pay by installments. As to payment of a proportionate share of taxes under Section 12 of the Local Tax Collection Law, the Tax Claim Bureau submits that release of the estate, title and interest of a joint tenant occurs upon payment by said joint tenant or tenant in common of his or her proportionate share. There was no tender of payment by either party, and this issue is therefore moot.

■ Upon reconsideration, the Court concludes that the trial court erred in holding that the Tax Claim Bureau did not abuse its discretion. Where a property owner pays at least twenty-five percent of the taxes owed and makes a prima facie showing of qualifying for a stay under Section 603 of the Tax Sale Law, a taxing authority has an affirmative duty to inquire whether the owner desires to enter into an installment agreement, as a matter of fundamental fairness and due process. *York*; *In re Upset Sale of Properties*, 126 Pa.Cmwlth. 280, 559 A.2d 600 (1989).

In the application for reconsideration counsel recounts the efforts that were made to tender a payment of twenty-five percent of the taxes due. Because counsel and White were specifically informed that a partial payment would not be accepted if tendered, their physical tender of twenty-five percent of the taxes due before the sale would have been a useless gesture. In addition, the Court agrees that the Tax Claim Bureau's rigid application of a policy of permitting installment plans only in regard to owner-occupied properties is not a proper exercise of discretion. Benedict testified: "We do not give a payment plan to a property that's being sold for delinquent taxes if it is not owner occupied. It's not that person's home. Therefore, they have the ability to sell that property

and they're not going to lose their home...." N.T. at p. 15. Section 603 of the Tax Sale Law provides for partial payments by an "owner" or a "lien creditor" of an owner, and nothing in that section limits the possibility of a payment plan only to owner-occupied property. Application of the policy described by Benedict would prevent any lien creditor from ever securing a payment plan. Conversely, if the policy were not applied to lien creditors, then, as White and Reilly argue, they would be in a better position than owners not in possession. Either result is plainly contrary to the statute.

White and Reilly maintain that the argument concerning a violation of the statutory right of the co-tenant, i.e., Reilly, to pay her share of the amount due was not rendered moot where the owners had been advised that only full payment would be accepted. The Court agrees that under Section 12 of the Local Tax Collection Law, quoted above, the tax liability is not unitary. Either White or Reilly was entitled to pay her proportionate share of the taxes due to remove her interest from the tax sale, but the affirmative representation of the Tax Claim Bureau that only the full amount would be accepted effectively precluded either of the co-tenants from paying her share. Benedict testified that the issue never had come up and that the Tax Claim Bureau had no policy. Nevertheless, by communicating that it would accept nothing other than full payment, the Tax Claim Bureau provided information contrary to the statutory right of a co-tenant.

The Court does not condone the tardy payment of real estate taxes by these owners. Nonetheless, the Court does not regard the errors in the Tax Claim Bureau's application of relevant statutes to be waived or harmless. Accordingly, the Court reverses the order of the trial court denying the petition filed by White to set aside the tax sale of the subject property. White and Reilly should be allowed an opportunity to pay their delinquent taxes in full or through a payment plan.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this 1st day of August, 2006, the order of the Court of Common Pleas of Susquehanna County is reversed.