**In Re CONSOLIDATED RETURN OF the TAX CLAIM BUREAU OF the COUNTY OF BEAVER FROM the AUGUST 16, 2011 UPSET SALE FOR DELINQUENT TAXES.**

**Eileen Battisti**

v.

**Beaver County Tax Claim Bureau and S.P. Lewis.**

**Appeal of: Eileen Battisti.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2014.

Decided Dec. 11, 2014.

---

77

Edgardo D. Santillan, Beaver, for appellant.

Joseph A. Askar, Beaver, for appellee Beaver County Tax Claim Bureau.

David E. Holland, Erie, for appellee S.P. Lewis.

BEFORE: DAN PELLEGRINI, President Judge, and RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Eileen Battisti (Taxpayer) appeals an order of the Beaver County Court of Common Pleas (trial court) that refused to set aside the sale of her home, which had a market value of approximately $250,000, in order to satisfy a 2009 tax delinquency of $234.72. It is not disputed that in September of 2010 Taxpayer paid $3,990.03, which was the total amount set forth in the Beaver County Tax Claim Bureau's notice of what she needed to pay to satisfy her 2009 real estate taxes. Likewise, it is not disputed that the Tax Claim Bureau did not advise her that it had applied some of the $3,990.03 payment to an outstanding 2008 shortfall, thereby creating a shortfall on the 2009 tax in the amount of $234.72. In this circumstance, Taxpayer contends that it was the Tax Claim Bureau's duty under the Real Estate Tax Sale Law[1] to offer Taxpayer an installment payment plan on the outstanding 2009 tax amount. We agree and reverse.

At issue is a family home located at 118 Rosewood Drive, Aliquippa, Pennsylvania (Property). Taxpayer and her husband, Anthony Battisti, purchased the house in 1999. Anthony Battisti was responsible for managing the family's finances, including the payment of all bills and taxes. He died in 2004. Taxpayer used her husband's life insurance policy to pay off the mortgage.

[1] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

Taxpayer, who was inexperienced in managing the household finances when her husband died, struggled with this new responsibility. She also struggled financially. Taxpayer did not pay the real estate taxes on the Property in a timely manner, which she attributed to her inexperience as well as several physical and emotional challenges.[2] On September 12, 2011, the Tax Claim Bureau sold her Property to S.P. Lewis (Bidder) for $113,000 for the $234.72 delinquency on the 2009 taxes.[3]

On October 11, 2011, Taxpayer filed objections and a petition to set aside the September 12, 2011, upset tax sale of her home, asserting a lack of notice of the outstanding debt or the sale. Both the Tax Claim Bureau and Bidder answered, and on November 18, 2011, Bidder filed a motion for judgment on the pleadings. Thereafter, Taxpayer, with permission of the trial court, filed an amended petition, but Bidder did not renew his motion for judgment on the pleadings.[4] Nevertheless, on May 18, 2012, the trial court granted the motion for judgment on the pleadings and dismissed Taxpayer's petition without a hearing.

This Court reversed the trial court, holding the procedural device of judgment on the pleadings was not available in a tax sale proceeding brought under the Real Estate Tax Sale Law. *Battisti v. Tax Claim Bureau of Beaver County*, 76 A.3d 111 (Pa.Cmwlth.2013). Accordingly, this Court remanded the matter to the trial court with instructions to hold an evidentiary hearing, and it did so on March 28, 2014.

The essential facts on the 2008 and 2009 taxes follow. The Central Valley School District notified the Tax Claim Bureau that there was an unpaid 2008 school tax on the Property in the amount of $833.88 plus a $42.01 penalty. Trial ct. op. at 1–2. The Tax Claim Bureau added a $15.00 entry fee to that amount for a total of $890.89. On April 1, 2009, the Tax Claim Bureau added $6.30, for one month of interest, which brought the total claim for the Property's 2008 school tax to $897.19. On May 7, 2009, the Tax Claim Bureau received a payment from Taxpayer in the amount of $897.19, the amount owing as of April 30, 2009. However, on May 1, 2009, the Tax Claim Bureau had added another $6.30 interest, which was not covered by Taxpayer's payment. The Tax Claim Bureau did not reject Taxpayer's payment of $897.19 as inadequate. Instead, it sent her

2. Taxpayer's physical and emotional challenges included her daughter's serious automobile accident, the murder of her son's best friend at college and her own disabling injury. Taxpayer's Brief at 10.

3. S.P. Lewis is an individual who purchases properties at tax sales and then sells them back to the taxpayer at a profit; this is Lewis' full-time occupation. Taxpayer's Brief at 14.

4. On January 24, 2012, Taxpayer filed an amended petition, stating that there were no unpaid taxes from 2009, only unpaid interest and costs, of which she lacked knowledge. On January 25, 2012, the trial court heard oral argument on Bidder's motion for judgment on the pleadings, at which Taxpayer did not appear. On February 27, 2012, Taxpayer filed a motion to set a hearing on her petition.

On February 29, 2012, Bidder filed an answer and new matter to Taxpayer's amended objections, but Bidder did not file a new motion for judgment on the pleadings. On March 22, 2012, Taxpayer filed a reply to Bidder's new matter.

Successful bidders must petition to intervene to participate in an objection proceeding because the Real Estate Tax Sale Law does not make them parties as a matter of course before the sale is confirmed. *In re 2005 Sale of Real Estate by Clinton County Tax Claim Bureau Delinquent Taxes*, 915 A.2d 719, 723 (Pa.Cmwlth.2007). The trial court denied Taxpayer's motion to remove Bidder from the case because her petition had named him as a respondent. Reproduced Record at 13a.

a document entitled "Receipt" that acknowledged its receipt of a "Total Remittance" of $897.19. Reproduced Record at 193a (R.R. ——).

The Tax Claim Bureau did not send an invoice to Taxpayer for $6.30; advise her that this amount would continue to grow over time; or tell her that the outstanding $6.30 could cause the sale of her Property. The only reference to the outstanding $6.30 was a notation on the bottom of the Tax Claim Bureau's "Receipt" that stated "Remaining Balance $6.30." *Id.* It did not explain the basis of the "remaining balance," let alone how it was to be paid or the deadline for doing so.

On June 3, 2009, the Tax Claim Bureau issued a "Notice of Return and Claim," stating a "Total Now Due" of $28.35 on the Property. This represented the $6.30 in interest added to the 2008 tax payment, plus postage and costs for a total of $28.35. R.R. 218a. The notice warned that if the $28.35 were not paid by July 1, 2010, the Property could be listed for a tax sale. This document was returned to the Tax Claim Bureau as unclaimed. Accordingly, on July 24, 2009, the Tax Claim Bureau posted a notice on the Property. Section 308(a) of the Real Estate Tax Sale Law, 72 P.S. § 5860.308(a) ("[I]f a notice mailed to an owner at [the] last known post office address is not delivered by the postal authorities, then notice as herein provided shall be posted on the property affected."); R.R. 219a. A copy of the actual posting was not entered into evidence.

In April of 2010, two taxing authorities notified the Tax Claim Bureau that 2009 taxes were owing on the Property. On June 3, 2010, the Tax Claim Bureau issued

a "Notice of Return and Claim" stating a "Total Now Due" of $3,832.72 on the 2009 County and school taxes for the Property. R.R. 216a. The notice warned that if payment were not received by July 1, 2011, the Property could be listed at a tax sale. The June 3, 2010, notice was returned as "unclaimed," and in July the Tax Claim Bureau posted a notice on the Property regarding the 2009 taxes. R.R. 217a.

In the meantime, there remained a delinquency of $28.35, plus costs and interest, on the 2008 taxes. However, in June of 2010 when the Tax Claim Bureau notified Taxpayer that her 2009 taxes were late, it did not also notify her of the more pressing delinquency that could cause her house to be sold in September of 2010, *i.e.*, the outstanding $28.35, plus costs and interest that had accrued on the original $6.30 in interest charged for Taxpayer's six-day late payment of the 2008 tax.

In July of 2010 the Tax Claim Bureau listed the Property for a tax upset sale to take place on September 13, 2010, because of the unpaid $6.30 in interest, plus the costs and interest that had accrued on the $6.30. The Tax Claim Bureau's notice of the impending sale was returned "unclaimed." R.R. 214a. The Tax Claim Bureau personally served Taxpayer on August 3, 2010, with a notice of the impending September sale. R.R. 215a.

This August notice stated that the upset sale price for Taxpayer's property was $3,990.03. However, the actual amount of payment needed to stop the tax sale on September 13, 2010, was $234.72. The upset sale price of $3,990.03 covered both the 2009 and 2010 taxes.[5] Notably, two months earlier, the Tax Claim Bureau had

---

5. The 2009 unpaid school tax of $234.72 triggered the upset tax sale in September 2010; however, the Tax Claim Bureau also included the unpaid 2010 taxes in the upset sale price. Section 605 of the Real Estate Tax Sale Law states that the upset sale price may be fixed to include "any other tax claim or tax judgment due on [the] property" as of the date of the sale. 72 P.S. § 5860.605.

notified Taxpayer that she had until July 1, 2011, to pay $3,832.72 for the 2009 taxes.

On September 11, 2010, the Tax Claim Bureau received a check from Taxpayer in the amount of $3,990.03, which was the total stated in the notice served upon Taxpayer in August 2010. The Tax Claim Bureau applied Taxpayer's payment to outstanding Bureau costs, then to outstanding interest, then to outstanding penalties and, finally, to the balance of the outstanding tax. Further, it applied the payment in order of age. Accordingly, the Tax Claim Bureau used the $3,990.03 to pay off the $234.72 in interest, costs and penalties owing on the 2008 taxes. It withheld a like amount, $234.72, from the school taxes owing for 2009. The Tax Claim Bureau removed the Property from the September 2010 tax sale.

The Tax Claim Bureau did not notify Taxpayer that it had withheld $234.72 from her payment on the 2009 school tax. It did not invoice her for $234.72. Instead, the Tax Claim Bureau sent Taxpayer a "Receipt" that acknowledged its receipt of a "Total Remittance" of $3,990.03, which its August notice had stated was the total amount needed to resolve 2009 real estate taxes. R.R. 196a.

On June 6, 2011, the Tax Claim Bureau sent a "Notice of Return and Claim" to Taxpayer, stating a "Total Now Due" of $4,341.26 for school, county, and local taxes owing on the Property for 2010. R.R. 209a. The notice stated that if Taxpayer did not pay this amount by July 1, 2012, her property could be listed for a tax sale. This notice was returned as unclaimed.

Meanwhile, the delinquency on the 2009 school tax of $234.72 remained outstanding. As noted, this amount had been withheld from the payment of $3,990.03 Taxpayer made in September of 2010. The Tax Claim Bureau did not send Taxpayer a notice that a payment of $234.72 needed to be paid in order to take her house off the list of properties scheduled for upset tax sale in September of 2011.[6]

On July 5, 2011, the Tax Claim Bureau sent a "Notice of Public Tax Sale" to Taxpayer, which stated an "upset sale price" of $4,715.29. R.R. 206a. This amount included the 2010 taxes that had to be paid by July 1, 2012, to avoid a tax sale.

The Tax Claim Bureau sent another Notice of Tax Sale to Taxpayer on August 12, 2011, and the Property was posted by a Beaver County Deputy Sheriff on August 16, 2011. No attempt was made to contact Taxpayer by telephone to inform her that her home would be sold unless she made a payment of $234.72 by September 10, 2011. On September 12, 2011, the Tax Claim Bureau sold the Property for $113,000.

On September 17, 2011, Taxpayer appeared at the Tax Claim Bureau to make a tax payment and learned that her home had already been sold. This litigation ensued. After an appeal and remand to the trial court, the trial court issued a second order. It denied Taxpayer's petition to set aside the tax sale for the stated reason that the Tax Claim Bureau had "complied with the notice requirements of the Real Estate Tax Sale Law." Trial ct. op. at 5. Taxpayer appealed to this Court.[7]

---

6. Taxpayer believed that she was current on all taxes when she paid $3,990.03. With respect to 2009, she testified that "I remitted the payment that I was told, and I thought I paid it all." R.R. 142a. As a result, she did not "think they could sell my house." R.R. 150a.

7. In tax sale cases, our review is limited to determining whether the trial court committed an error of law, abused its discretion, or rendered a decision without supporting evidence. *Darden v. Montgomery County Tax Claim Bureau*, 157 Pa.Cmwlth. 357, 629 A.2d 321, 323 (1993).

On appeal, Taxpayer raises several issues.[8] First, she argues that the trial court erred in refusing to set aside the upset tax sale because the Tax Claim Bureau did not offer her a payment plan as required by the Real Estate Tax Sale Law, when her 2009 payment was short by $234.72. Second, Taxpayer argues that the trial court erred because Taxpayer paid all the taxes that she had been advised were necessary to avoid a tax sale. Third, Taxpayer contends that the trial court failed to consider the due process implications of allowing her house to be sold for an amount well below its market value of $250,000 to $280,000. Fourth, Taxpayer argues that the trial court failed to consider Taxpayer's inability to comprehend the confusing notices of the Tax Claim Bureau. Finally, Taxpayer contends that she was deprived of her constitutional right to due process and equal protection of law. Bidder disagrees.[9]

■ The purpose of the Real Estate Tax Sale Law is to ensure the collection of taxes, not to deprive citizens of their property or to create investment opportunities for those who attend tax sales. *Stanford–Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1216 (Pa. Cmwlth.2003). The United States Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:

> [p]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

*Jones v. Flowers*, 547 U.S. 220, 234, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). Because of these due process concerns, this Court has explained that

> the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute.

*Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa.Cmwlth.2003). A failure by a tax claim bureau to comply with each and every statutory requirement will nullify a sale.

■ In her first issue, Taxpayer argues that the Tax Claim Bureau did not offer her a payment plan, which is guaranteed to her by Section 603 of the Real Estate Tax Sale Law. Taxpayer contends that this lapse, in itself, provides a basis to set aside the tax sale of her home.

Section 603 of the Real Estate Tax Sale Law provides that a scheduled tax sale

---

8. Several organizations have filed an *amicus curiae* brief in support of Taxpayer. AARP, formerly known as the American Association of Retired Persons, is a nonprofit organization which promotes the interests of individuals over the age of 50 and seeks to protect older individuals from unfair and abusive business practices. The National Association of Consumer Advocates is a non profit corporation comprised of attorneys, law professors, and law students who primarily focus on the protection of consumers. The National Consumer Law Center is an advocacy organization which focuses on the needs of low income and elderly consumers.

Amici argue in their brief that even if the Tax Claim Bureau complied with all the notice requirements of the Real Estate Tax Sale Law, the sale of Taxpayer's Property should be set aside as a matter of due process because the information contained in the notices was inaccurate and confusing. *Amici* contend that the notice issue particularly is relevant to older homeowners who face rising costs and other economic pressures, and are often disabled or suffer from diminished mental capacity.

9. The Tax Claim Bureau joined Bidder's brief.

may be stopped by the taxpayer's payment of 25% of the amount of taxes due and agreement to an installment plan for the remainder. Section 603 states, in relevant part, as follows:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, ... (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.

72 P.S. § 5860.603. This Court has held that the tax claim bureau must advise the taxpayer of the Section 603 option because its failure to do so "would deprive the owner of his or her property without due process of law." *Darden v. Montgomery County Tax Claim Bureau,* 157 Pa. Cmwlth. 357, 629 A.2d 321, 323 (1993). Stated otherwise, it is not the taxpayer's burden to request an installment agreement.

The obligation of a tax claim bureau to notify a taxpayer of the right to an installment plan upon receipt of at least 25% of what is owed has been recently reviewed and underscored by this Court as follows:

> This Court has repeatedly held that where an owner has paid at least 25% of the taxes due, the tax authority is required to inform the owner of the option to enter into an installment agreement and that a failure to do so is a violation of the owner's due process rights. *Reilly v. Susquehanna Cnty. Tax Claim Bureau,* 904 A.2d 49, 53 (Pa.Cmwlth.2006); *York v. Roach,* 163 Pa.Cmwlth. 58, 61–62, 639 A.2d 1291 (1994); *Darden v. Montgomery Cnty. Tax Claim Bureau,* 157 Pa.Cmwlth. 357, 629 A.2d 321, 323–24 (1993).
>
> The record shows that [the taxpayer] had paid $2,394.34 in taxes for 2010 and that her outstanding balance was $287.55.... Thus, at the time the Property was listed for tax sale, [the taxpayer] had paid approximately 88% of the tax owed for 2010.... We conclude that the trial court erred as a matter of law in denying [the taxpayer's] petition to set aside tax sale when the record showed that the Bureau failed to offer [the taxpayer], who was an equitable owner of the property and had paid well in excess of 25% of the taxes due, the opportunity to enter into an installment agreement.

*Moore v. Keller,* 98 A.3d 1, 5 (Pa.Cmwlth. 2014). This case cannot be distinguished from Moore.

 Michael Kohlman, Chief Assessor for Beaver County, testified about a Section 603 installment plan as follows:

Q. So in that situation statutorily you can stay the sale upon a request for the repayment plan?

A. Absolutely, yes, sir.

Q. And was that repayment plan offered to Miss Battisti, to the Petitioner?

A. It was available. It was offered generally to any taxpayer who would wish to enter into it. *Specifically to Mrs. Battisti verbally, no.*

R.R. 99a (emphasis added). Notably, a reference to Section 603 in the Notice and Return sent to a taxpayer before a payment is received does not satisfy the tax claim bureau's obligation to offer an installment plan. *Darden*, 629 A.2d at 323. To satisfy due process, the Tax Claim Bureau must notify Taxpayer of her rights under Section 603 *after* it has received in excess of 25% of the outstanding amount.

Taxpayer's payment of $3,990.03, which was made on September 11, 2010, discharged the 2008 school tax delinquency and covered over 90% of the 2009 real estate taxes. The 2009 school tax was short by $234.72. At that point, the Tax Claim Bureau was obligated to present Taxpayer with the option of an installment plan to pay the remaining 2009 balance. It did not do so. Had it done so, Taxpayer would have learned of her outstanding balance of $234.72 and easily averted the tax sale in 2011. The Tax Claim Bureau did not make this offer, and this omission violated the Real Estate Tax Sale Law as well as due process.

The *amici curiae* and Taxpayer argue that due process requires meaningful. notice of a tax liability. The Tax Claim Bureau's notices were "faulty, confusing and [illegible]" and, they claim, do not satisfy due process. Taxpayer's Brief at 38. They assert that the notices were misleading because they did not state the actual amount of payment needed to prevent a tax sale. It is undisputed that the Tax Claim Bureau never took the simple step of invoicing Taxpayer for the $6.30 or the $234.72,[10] amounts even the Chief Assessor believed to be *de minimis*. In addition, the Tax Claim Bureau's notices jump around in time. The Tax Claim Bureau's "Notice of Return and Claim" sent to Taxpayer in June 2011 informed her that she had to pay $4,341.26 by July 2012 to prevent her home from being listed for a tax sale to take place in 2013. The notice did not alert her that there was an older balance of $234.72 that was going to trigger a tax sale in a matter of weeks. The August 2011 notice of the imminent tax sale of the Property stated an upset sale price of $4,715.29, yet another number. However, Taxpayer had been told in June she had until 2012 to pay $4,341.26.

The Real Estate Tax Sale Law states the minimum effort to be done by a tax claim bureau. A reasonable tax·claim bureau would have responded to Taxpayer's payment on the 2008 taxes with an invoice for $6.30, and it would have invoiced Taxpayer in 2010 for the 2009 shortage of $234.72. A tax claim bureau must satisfy due process, as well as the statute.[11] Nevertheless, we need not address this legal question because we reverse on the basis of the Tax Claim Bureau's failure to offer Taxpayer an installment plan.

---

10. After Taxpayer made her September 11, 2010, payment, the Tax Claim Bureau sent her a "Receipt," not an "Invoice." A receipt and invoice are two completely different documents that serve different purposes. The "Receipt" recorded Taxpayer's "Total Remittance" of $3,990.03, which was the total amount she was told to pay to prevent a tax sale in September 2010. The notation regarding the "remaining balance" of $234.72 was not an invoice. Further, the "Receipt" document had no instructions on how to pay the balance, what it was for, and the deadline for its payment. ·

11. Likewise, we do not address Taxpayer's additional arguments regarding the inadequate. sale price, equal protection and the Tax Claim Bureau's arbitrary decision not to keep her Property off the tax sale list for a *de minimis* delinquency. The Beaver County Chief Assessor, Michael Kohlman, testified that ordinarily he would not place a house for sale where a small amount was owed. He stated, "[w]ell, small amounts we would not place the property up for sale, that's correct." R.R. 64a. When asked if $234.72 was a "minimal amount," he answered, "[i]t certainly is." R.R. 76a. Nevertheless, he proceeded with the sale of the Property.

Because the Tax Claim Bureau did not offer Taxpayer an installment plan option as required by Section 603 of the Real Estate Tax Sale Law, we reverse the trial court's order.

## *ORDER*

AND NOW, this 11th day of December, 2014, the order of the Beaver County Court of Common Pleas dated April 22, 2014, in the above-captioned matter is hereby REVERSED.