IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Consolidated Return of the : 
Tax Claim Bureau of Indiana County : 
from the September 16, 2019 : 
Upset Sale for Delinquent Taxes : 
 : 
Theresa Burba and Joseph Burba : 
 :   No.  644 C.D. 2020
 v. : 
 :   Submitted:  February 9, 2021
Indiana County Tax Claim Bureau : 
and Nicholas Krowchena : 
 : 
Appeal of:  Theresa Burba and : 
Joseph Burba : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED:  March 9, 2021


Theresa and Joseph Burba (the Burbas) appeal from the May 8, 2020 order of the Court of Common Pleas of Indiana County (trial court), which denied their petition to overturn a tax sale of their property (Petition).

The Burbas paid taxes on their property for many years and entered into a payment plan for the 2013-2014 tax years, as more fully discussed below.  However, they did not pay any of the real estate taxes owed for the 2017 tax year.  Accordingly, following the Indiana County Tax Claim Bureau's (Bureau) notices of the delinquency

and of the impending sale under the Real Estate Tax Sale Law (Tax Sale Law),[1] the property was sold on September 16, 2019, to the successful bidder, Nicholas Krowchena.[2]

In their Petition challenging the sale, the Burbas asserted that the sale was invalid because the Bureau did not provide them with notice of the availability of a payment plan. It was further disputed whether the Burbas were, in fact, eligible for such a plan. Section 603 of the Tax Sale Law provides, in relevant part:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) *enter into an agreement, in writing, with the bureau to stay the sale of the property **upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments** filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement*, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed. But in case of default in such agreement by the owner or lien creditor, the bureau, after written notice of such default given by United States mail, postage prepaid, to the owner or lien creditor at the address stated in the agreement, shall apply all payments made against the oldest delinquent taxes and costs, then against the more recent. . . . **If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default**.

77 P.S. §5860.603 (emphases added).

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803.

[2] Krowchena intervened in the proceedings below, and has filed a brief in this appeal in support of the trial court's order.

The question of the Burbas' eligibility for an installment payment plan arose due to their prior default on such an agreement. The Deputy Director of the Bureau, Anna Bodner, testified at a hearing on the Burbas' Petition, and explained that the Burbas entered into a payment plan with the Bureau in August 2015 for payment of their delinquent 2013-2014 property taxes. (Notes of Testimony, 3/3/2020 (N.T.), at 28; Reproduced Record (R.R.) at 58a.) Consistent with section 603 of the Tax Sale Law, that plan required a 25% down payment of the taxes due, followed by three additional quarterly payments. *Id.* Bodner testified that the Burbas failed to make a required installment payment, which the Bureau considered to be a default, triggering the three-year period for which the Burbas were ineligible for a future installment agreement. (N.T. at 29; R.R. at 59a.) The exact date of the Burbas' default was not specified, however, because the Burbas ultimately paid their 2013-2014 taxes in August 2016, and the Bureau does not retain records relating to installment agreements for past years in which the taxes are paid in full. (N.T. at 29-30; R.R. at 59a-60a.)

Regardless, it was the Bureau's position that it was not required to offer the Burbas a payment plan for their unpaid 2017 taxes because the Burbas had not paid any amount toward their property taxes for the years 2017 and 2018. (N.T. at 31; R.R. at 61a.) Due to their delinquency, the Bureau commenced proceedings to collect the taxes owed, and ultimately to conduct a tax upset sale. Detailing the history of the Bureau's collection efforts, Bodner testified regarding each of the notices that the Bureau provided to the Burbas, as required by the Tax Sale Law. (N.T. at 32-35; R.R. at 62a-65a.) Among these notices, moreover, was a pre-sale courtesy letter that the Bureau uses to inform taxpayers that their property could be subject to a tax sale, and in the center of the letter, in all capital letters, were the words: "PAYMENT PLANS MAY BE AVAILABLE." (N.T. at 32; R.R. at 62a; Hr'g Ex. 5, R.R. at 108a.) Bodner

testified that the Burbas did not contact the Bureau in advance of the tax sale and did not request any information about a payment plan.  (N.T. at 36; R.R. at 66a.)

Theresa Burba (Theresa) testified in support of the Burbas' Petition. Theresa confirmed that she and her husband entered into a payment plan with the Bureau for their 2013-2014 property taxes, and acknowledged that they failed to make a required installment payment.  (N.T. at 49; R.R. at 79a.)  She could not, however, recall specific dates of their default or when they ultimately paid the total amount due on their 2013-2014 taxes.  *Id.*  Theresa believed that, due to the default, she would be ineligible for a future payment plan.  (N.T. at 50; R.R. at 80a.)

Theresa acknowledged that she and her husband had not paid any portion of their property taxes for the 2017 and 2018 tax years.  (N.T. at 51; R.R. at 81a.)  In 2019, it was her understanding that she was ineligible for a payment plan.  (N.T. at 53; R.R. at 83a.)  Theresa recognized that the Bureau's notices instructed her to call the Bureau or to contact a lawyer, but she explained that she did not do so because she was embarrassed.  (N.T. at 54; R.R. at 84a.)  Had a payment plan been available, however, she would have sought to enter into one.  *Id.*  On cross-examination, counsel for the Bureau sought to clarify the basis for Theresa's belief that she was ineligible for a payment plan, and Theresa explained that she believed she had spoken to someone at the Bureau regarding her 2016 taxes and learned that she was ineligible for a payment plan at that time.  (N.T. at 59; R.R. at 89a.)  She could not recall with certainty, however, whether or when that conversation occurred.  *Id.*  Counsel for Krowchena asked Theresa whether she made any attempt to contact the Bureau or an attorney in advance of the tax sale, and Theresa testified that she called the Bureau on the morning of the tax sale, but there was nothing she could do at that point.  (N.T. at 61; R.R. at 91a.)

4

The trial court denied the Burbas' Petition on May 8, 2020. Relying upon this Court's precedent, the trial court explained that "a taxing authority must notify a taxpayer of the availability of a payment plan [when] at least 25% of the delinquent taxes have been paid." (Trial Ct. Op. at 3 (citing *In re Sale by Tax Claim Bureau of Bedford County of Tax Parcel G.14-0.00-007*, 112 A.3d 685 (Pa. Cmwlth. 2015) (*Vignola*); *Moore v. Keller*, 98 A.3d 1 (Pa. Cmwlth. 2014)).) "What is notably absent from the statute or precedent," the trial court observed, "is a duty on the part of the taxing authority to provide notice prior to the required minimum payment having been made." *Id.* Because the Burbas made no payment toward their 2017 taxes, the trial court concluded that the Bureau had no duty to inform them of the availability of a payment plan. *Id.*

Apart from the absence of a duty on the part of the Bureau to notify the Burbas of a payment plan option, the trial court rejected the Burbas' contention that they were eligible for a payment plan in the first place. The trial court noted Theresa's belief that she was ineligible, and that she accordingly declined to contact the Bureau or an attorney in advance of the tax sale. *Id.* at 3-4. Although the trial court found it understandable that Theresa may have been embarrassed about the situation, because the Bureau had no duty to inform the Burbas about a payment plan option, the trial court concluded that the Bureau could not be held responsible for the Burbas' lack of action. *Id.* at 4.[3]

---

[3] The trial court noted that the Burbas also had pointed to a then-pending appeal of this Court's decision in *Fouse v. Saratoga Partners, L.P.*, 204 A.3d 1028 (Pa. Cmwlth. 2019), *aff'd sub nom. Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198 (Pa. 2020), in which this Court rejected an equal protection challenge to the Tax Sale Law based upon the absence of a post-sale right of redemption, inasmuch as that right is afforded to residents of first and second class counties under a different statutory scheme. The present author dissented in *Fouse*. *Id.* at 1039-42 (McCullough, J., dissenting). Although the Burbas hoped that the Pennsylvania Supreme Court would reverse our decision in

**(Footnote continued on next page…)**

The Burbas appealed the trial court's order to this Court.[4] The Burbas claim that the Bureau "misled" or "misinformed" them about their eligibility for a payment plan. (Burbas' Br. at 9.) They additionally contend that the trial court placed the burden upon them to demonstrate that they were misled, which the Burbas consider to be an error given that this Court has held that taxing authorities bear the burden to demonstrate their compliance with the notice provisions of the Tax Sale Law. *Id.* at 11 (citing, *inter alia*, *FS Partners v. York County Tax Claim Bureau*, 132 A.3d 577, 581 (Pa. Cmwlth. 2016)). The Burbas suggest that the Bureau's evidentiary burden should include its demonstration that it provided taxpayers with notice of their eligibility or ineligibility for a payment plan, regardless of whether the taxpayers are in fact eligible, or whether they paid 25% of the taxes due under section 603 of the Tax Sale Law, 72 P.S. §5860.603. The contrary, the Burbas suggest, "would require the property owners to prove a negative, that they did not receive notice, rather than requiring the Bureau to affirmatively prove it sent notice that was then received." *Id.* at 12.

The Burbas compare the instant appeal to *Reilly v. Susquehanna County Tax Claim Bureau*, 904 A.2d 49 (Pa. Cmwlth. 2006), which, they contend, supports the proposition that misinforming a tax debtor regarding the availability of a payment plan requires the subsequent tax sale to be set aside. In *Reilly*, the taxing authority rejected a taxpayer's request for a payment plan on the basis that the property was not occupied

---

*Fouse*, the trial court concluded that it was bound to follow the law as it existed at the time, which afforded the Burbas no constitutional remedy. (Trial Ct. Op. at 4.) The Burbas' wish did not come true, however, as the Supreme Court ultimately affirmed this Court's decision. *See Lohr*, 238 A.3d 1198.

[4] "Our review in tax sale cases is 'limited to determining whether the trial court abused its discretion, clearly erred as a matter of law[,] or rendered a decision with a lack of supporting evidence.'" *In re Consolidated Reports and Return by the Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 643 n.12 (Pa. Cmwlth. 2016) (*en banc*) (quoting *Rice v. Compro Distributing, Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006)).

6

by the owner—a requirement that did not appear in section 603 of the Tax Sale Law. *Id.* at 53-54. The Burbas argue that, under *Reilly*, the Bureau's "misrepresentation" concerning their eligibility for a payment plan renders the subsequent sale void. (Burbas' Br. at 13.) The Burbas further cite several decisions that set aside tax sales on the basis that taxing authorities failed to comply with required notice procedures. *Id.* at 14 (citing *In re York County Tax Claim Bureau*, 171 A.2d 765, 768 (Pa. 1961); *Barker v. Chester County Tax Claim Bureau*, 143 A.3d 1069, 1074 (Pa. Cmwlth. 2016)). Because they suggest that the Bureau here failed to provide them with notice of their eligibility for a payment plan, the Burbas ask this Court to reverse the order of the trial court and to set aside the tax sale of their property.

The Bureau, for its part, acknowledges that it was incumbent upon it to demonstrate its compliance with the notice requirements of the Tax Sale Law. (Bureau's Br. at 12.) To that end, the Bureau recounts the testimony and exhibits that it provided to the trial court to prove that it followed all of the required notice procedures. *Id.* at 5-8. As for the purported necessity of providing notice to the Burbas regarding payment plans, the Bureau relies upon the line of this Court's precedent, cited by the trial court and discussed below, holding that taxing authorities have no duty to provide such notice when the taxpayer has not paid at least 25% of the taxes due, as was the case here. *Id.* at 12-15. Finally, the Bureau argues that the facts of *Reilly* are inapposite, that it did not reject a partial payment as in *Reilly* because the Burbas never attempted to make such a payment, and that it had no opportunity to mislead the Burbas because the Burbas did not contact the Bureau until the day of the tax sale. *Id.* at 16.[5]

---

[5] Krowchena's arguments largely echo those of the Bureau.

7

At the outset, the Burbas' position that they were "misled" about their eligibility for a payment plan presumes that they were, in fact, eligible for such a plan. This is not clearly established in the record. Section 603 of the Tax Sale Law provides that, "[i]f a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person *within three (3) years of the default*." 72 P.S. §5860.603 (emphasis added). Due to the Bureau's lack of record-keeping, and Theresa's inability to recall, the exact date of the Burbas' default on their earlier payment plan was not established. However, it appears that the Burbas paid the balance of their unpaid taxes for the 2013-2014 tax years in August 2016, completing the payment plan that they entered into in August 2015. (N.T. at 29; R.R. at 59a.) Thus, we may presume that the three years specified in section 603 must have expired sometime before August 2019—approximately one month before the tax sale at issue. Accordingly, affording the Burbas the benefit of the doubt, we assume that they would have become statutorily eligible to enter into a new payment plan at some point in the year leading up to the September 16, 2019 tax sale, upon their payment of 25% of the taxes due.

That latter caveat, however, is significant. It is not the Burbas' hypothetical eligibility for a payment plan, by itself, that controls the outcome of this appeal. A long line of this Court's precedent holds that a taxing authority has a duty to notify a taxpayer of the availability of an installment payment plan under section 603 of the Tax Sale Law only when the taxpayer pays at least 25% of the taxes due. *See, e.g.*, *Matter of Tax Sale 2018-Upset*, 227 A.3d 957, 961 (Pa. Cmwlth. 2020) (*Kemmler*); *Vignola*, 112 A.3d at 688; *In re Consolidated Return of Tax Claim Bureau of County of Beaver from August 16, 2011 Upset Sale for Delinquent Taxes*, 105 A.3d 76, 83 (Pa. Cmwlth. 2014) (*Battisti II*); *Moore*, 98 A.3d at 5; *Reilly*, 904 A.2d at 53;

8

*York v. Roach*, 639 A.2d 1291, 1292 (Pa. Cmwlth. 1994); *Darden v. Montgomery County Tax Claim Bureau*, 629 A.2d 321, 323-24 (Pa. Cmwlth. 1993). The Burbas' position is squarely at odds with this well-settled precedent. A brief comparison of just two of the more recent decisions illustrates the dispositive principle.

*Battisti II*, to which the Burbas' brief makes several references, is a case where this Court set aside a tax sale due to the tax claim bureau's failure to provide notice of the availability of a payment plan. In *Battisti II*, the taxpayer paid $3,990.03 to the bureau, which was the total amount set forth in the bureau's notice specifying the amount of her 2009 tax delinquency. *Battisti II*, 105 A.3d at 77. Unbeknownst to the taxpayer, the bureau applied some of that amount to an outstanding 2008 shortfall, leaving $234.72 of the taxpayer's 2009 taxes unpaid. *Id.* The bureau did not inform the taxpayer that she could enter into an installment agreement for the remainder. Quoting from *Moore*, we noted that "[t]his Court has repeatedly held that where an owner has paid at least 25% of the taxes due, the tax authority is required to inform the owner of the option to enter into an installment agreement and that a failure to do so is a violation of the owner's due process rights." *Id.* at 82 (quoting *Moore*, 98 A.3d at 5). The taxpayer's payment of $3,990.03, we emphasized, "covered *over 90%* of the 2009 real estate taxes." *Id.* at 83 (emphasis added). Thus, because this exceeded the 25% threshold, we concluded that the bureau "was obligated to present [the taxpayer] with the option of an installment plan to pay the remaining 2009 balance." *Id.* Because it did not do so, this Court reversed the trial court's order denying the taxpayer's petition to set aside the tax sale. *Id.* at 84.

This Court's decision in *Kemmler* provides a contrast. In *Kemmler*, the taxpayers did not pay their 2016 real estate taxes, and the delinquency ultimately resulted in a tax sale in 2018. *Kemmler*, 227 A.3d at 958. On appeal from the denial

9

of their petition to set aside the tax sale, the taxpayers argued, *inter alia*, "that they were entitled to notice of their potential right to enter into an installment agreement *before* they paid 25% of their outstanding tax liability." *Id.* at 961 (emphasis in original). Relying upon the same line of precedent discussed in *Battisti II*, this Court explained that we have "consistently held that *if an owner has paid at least 25% of his delinquent taxes, then* a taxing authority is required to inform the owner of the option to enter into an installment agreement, and the failure to do so is a violation of the taxpayer's due process" rights. *Id.* (quoting *Moore*, 98 A.3d at 5) (emphasis in original). The taxpayers did not dispute that they failed to pay at least 25% of the taxes owed. *Id.* at 962. "Thus, under our precedent, the [b]ureau was under no duty to provide any notice that an installment agreement was available" under section 603 of the Tax Sale Law. *Id.* The taxpayers "would have only been entitled to such notice if they had made a qualifying payment, which they did not." *Id.* at 964.

The instant appeal is similar to *Kemmler*. It is undisputed that the Burbas paid no portion of their 2017 or 2018 real estate taxes. (N.T. at 31, 51; R.R. at 61a, 81a.) They did not attempt to pay any amount toward the shortfall at any point before the September 16, 2019 tax sale. Like the taxpayers in *Kemmler*, the Burbas "argue that the duty of the Bureau to inform a taxpayer of the installment agreement option arises prior to the payment of 25% of the delinquent tax liability." *Id.* at 962. "However, our cases above are clear on this issue; this burden is not placed on the Bureau until **after** 25% of the delinquent tax liability is paid." *Id.* (emphasis in original).

Contrary to the Burbas' argument, the instant case is readily distinguishable from *Reilly*. In that case, a taxpayer facing an imminent tax sale contacted the tax claim bureau to request an installment payment plan, and the bureau

10

rejected that request pursuant to an internal policy allowing such plans only when the owner resided on the property. *Reilly*, 904 A.2d at 50. This Court cited the familiar principle discussed above: "Where a property owner pays at least twenty-five percent of the taxes owed and makes a prima facie showing of qualifying for a stay under [s]ection 603 of the Tax Sale Law, a taxing authority has an affirmative duty to inquire whether the owner desires to enter into an installment agreement . . . ." *Id.* at 53. The taxpayer had not paid the requisite 25% of the delinquent taxes, but, this Court noted, she and her counsel "were specifically informed that a partial payment would not be accepted if tendered" due to the bureau's internal policy. *Id.* Reviewing section 603, this Court found "nothing in that section [that] limits the possibility of a payment plan only to owner-occupied property." *Id.* at 54. Because the bureau's policy reflected a misapplication of the statute and the addition of a requirement not present therein, we concluded that it was erroneous for the bureau to reject the taxpayer's offer of partial payment and her request for a payment plan. *Id.*

Here, by contrast, there is no suggestion that the Bureau has imposed any extra-statutory preconditions to the entry of an installment payment plan. Indeed, the Bureau previously allowed the Burbas to utilize such a payment plan. Moreover, the Burbas made no attempt to tender a partial payment to the Bureau, and there is no suggestion that the Bureau would have rejected a 25% payment if it had been offered. Thus, *Reilly* is inapposite.

To be clear, an underlying premise of the Burbas' position is certainly true. The Bureau indeed "has the burden of proving compliance with the statutory notice provisions." *In re Consolidated Reports and Return by Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (*en banc*) (*Neff*) (quoting *Krawec v. Carbon County Tax Claim Bureau*, 842 A.2d 520, 523

(Pa. Cmwlth. 2004)); *see also FS Partners*, 132 A.3d at 581. These notice provisions are found in sections 602 and 601(a)(3) of the Tax Sale Law, 72 P.S. §§5860.602, 5860.601(a)(3). Section 602 requires three forms of notice: publication, posting, and mail.[6] *Neff*, 132 A.3d at 644-45. If the owner occupies the property, then section 601(a)(3) requires personal service of an additional notice of the tax sale. 72 P.S. §5860.601(a)(3). The Bureau sought to demonstrate its compliance with these statutory notice provisions through Bodner's testimony and supporting documentation, which were submitted as exhibits at the hearing. (N.T. at 32-35; R.R. at 62a-65a.) Those exhibits were admitted into evidence without objection. (N.T. at 43-44; R.R. at 73a-74a.)

The Burbas have not challenged the sufficiency of the Bureau's notices or otherwise suggested any violation of sections 602 or 601(a)(3). Rather, their position is that the Bureau's general obligation to prove its compliance with the statutory notice requirements should specifically encompass a duty to provide notice to taxpayers regarding their eligibility for a payment plan under section 603. As discussed above, however, our precedent makes abundantly clear that the Bureau had no such duty because the Burbas did not pay at least 25% of the delinquent taxes at issue. To the extent the Burbas contend that the trial court improperly shifted the Bureau's burden to them, requiring them to demonstrate that notice was *not* provided, the Burbas are

---

[6] Specifically, section 602(a) requires that notice be published in two "newspapers of general circulation in the county" and one "legal journal, if any, designated by the court for publication of legal notices" at least 30 days prior to the scheduled sale. 72 P.S. §5860.602(a). Section 602(e)(3) requires that the "property scheduled for sale shall be posted at least ten (10) days prior to the sale." *Id.* §5860.602(e)(3). Section 602(e)(1) requires notice to be sent "[a]t least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid" to the owner of the property. *Id.* §5860.602(e)(1).

mistaken. As discussed above, with regard to issuing notice of the availability of a payment plan, the Bureau had no such burden in the first place.[7]

Finally, we find no evidence to support the Burbas' contention that the Bureau "misled" or "misinformed" them about their eligibility for a payment plan. The only discernable evidence that could suggest something along those lines was Theresa's testimony that she recalled speaking to someone at the Bureau about her 2016 taxes, and learned that she was ineligible for a payment plan. (N.T. at 59; R.R. at 89a.) However, the Burbas almost certainly were ineligible for a payment plan at that time, having defaulted on their previous payment plan at some point between August 2015 and August 2016, thus triggering their ineligibility for a three-year period under section 603 of the Tax Sale Law. The Burbas assert that the trial court erroneously "imposed the burden upon [them] to prove that the [Bureau] misled them," (Burbas' Br. at 11), but in seeking to place a burden upon the Bureau to prove that it did *not* mislead them, it is the Burbas who ask the Bureau to "prove a negative." *Id.* at 12. The Burbas otherwise do not point to any instance in which the Bureau provided them with misleading or inaccurate information.

In sum, regardless of whether the Burbas were eligible for an installment payment plan under section 603 of the Tax Sale Law, their failure to pay any portion of their delinquent taxes means that they were far short of the 25% payment that would trigger an obligation on the part of the Bureau to notify them of the availability of a payment plan. It is always unfortunate when property owners face such financial

---

[7] Moreover, as noted above, we observe that a pre-sale letter that the Bureau sent to the Burbas included a notice, in the middle of the page and in all capital letters, that "PAYMENT PLANS MAY BE AVAILABLE." (N.T. at 32; R.R. at 62a; Hr'g Ex. 5, R.R. at 108a.) We offer no opinion as to whether this language alone would have sufficed to satisfy the Bureau's duty, had the Burbas paid at least 25% of the taxes due, to notify them of such an option. However, it is noteworthy that the Bureau indeed suggested to the Burbas the possibility of a payment plan during the pendency of the proceedings leading to the tax sale.

hardships as to lose their properties in this manner.  However, our review of the trial court's decision reveals no error, but rather an appropriate application of a statute and the well-settled precedent interpreting its requirements.

The order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Consolidated Return of the :
Tax Claim Bureau of Indiana County :
from the September 16, 2019 :
Upset Sale for Delinquent Taxes :
 :
Theresa Burba and Joseph Burba :
 : No. 644 C.D. 2020
v. :
 :
Indiana County Tax Claim Bureau :
and Nicholas Krowchena :
 :
Appeal of: Theresa Burba and :
Joseph Burba :

## *ORDER*

AND NOW, this 9th day of March, 2021, the order of the Court of Common Pleas of Indiana County is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge