**In re: SALE BY TAX CLAIM BUREAU OF BEDFORD COUNTY OF TAX PARCEL G.14–0.00–007.**

**Joann P. Vignola**

**Bedford County Tax Claim Bureau**

**Blaine Colledge**

**Appeal of: Joann P. Vignola.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 2014.
Decided March 30, 2015.

David L. Kornfield, Waynesboro, for appellant.

Barry R. Scatton, Bedford, for appellee Bedford County Tax Claim Bureau.

Dwight G. Diehl, Bedford, for appellee Blaine Colledge.

BEFORE: BERNARD L. McGINLEY, Judge, ROBERT SIMPSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge McGINLEY.

Joann P. Vignola (Vignola) appeals from the order of the Court of Common Pleas of Bedford County (trial court) which denied her Exceptions/Objections to Tax Claim Upset Sale (Upset Sale).

Before the Upset Sale, Vignola owned 107 acres, with a two-story house, garage and barn located in Monroe Township, Bedford County (Property). Vignola, a seventy-two year old widow, resided with her son and daughter-in-law in Maryland at the time of the Upset Sale. Vignola and her husband purchased the Property in 1967 and raised their family there.

The Property was initially exposed to an upset tax sale in 2012 for delinquent 2010 and 2011 taxes. The Bedford County Tax Claim Bureau (Tax Claim Bureau) removed the Property from the tax sale list after Vignola made several payments which were sufficient to satisfy the 2010 tax delinquency. Hearing Transcript, March 21, 2014 (H.T.), at 67–68; Reproduced Record (R.R.) at 24.

The Property was again exposed to sale in 2013 for unpaid 2011 and 2012 taxes. The Tax Claim Bureau sent a Notice of Sale which indicated that "THE SUM FOR TAXES PRIOR TO 2012 WHICH WILL REMOVE THE PROPERTY FROM THE SALE IS $2,638.40." H.T. at 13–14; R.R. at 10. (Emphasis in original.) On August 26, 2013, Vignola sent a partial payment in the amount of $1,000.00 to the Tax Claim Bureau.

On September 30, 2013, the Property was sold at the Upset Sale to Blaine Colledge (Colledge). Vignola filed objections to the Upset Sale and the trial court held a hearing on March 31, 2014.

The Tax Claim Bureau offered into evidence the statutory notices that were sent to Vignola via certified mail, and the return receipts which indicated that they were received by Vignola. It also offered evidence that the sale was published in accordance with Section 602 of the Real

Estate Tax Sale Law (RETSL)[1], 72 P.S. § 5860.602, and the sheriff's copy of the Notice of Sale which indicated that Deputy Roy Nelson visited the Property on August 20, 2013, and posted notice on the gate facing the road. Colledge testified that after the Upset Sale, he removed the Posted Notice from the gate. The original Posted Notice was entered into evidence as Exhibit 9.

Vignola testified that she spoke to the Tax Claim Bureau about her delinquent 2011 and 2012 taxes. She purchased a money order in the amount of $1,000.00 on August 2, 2013, and made a partial payment. She did not receive any other communication from the Tax Claim Bureau. H.T. at 35–36; R.R. at 16. Vignola later learned from a neighbor in Bedford that her Property was sold.

Robert Roland (Roland) testified for the Tax Claim Bureau. He confirmed that the Tax Claim Bureau received a $1,000.00 money order from Vignola *before the 2013 Upset sale*. He did not speak to Vignola prior to the sale. H.T. at 69; R.R. at 24. Roland testified that, unlike in 2012, Vignola did not contact the Tax Claim Bureau to verify that the money she paid was sufficient to remove the Property from the 2013 tax sale list:

Q. Now, unlike 2012 when Mrs. Vignola obviously followed through to verify that the money she paid in 2012 would clear the—clear the property from the

2012 sale. After receipt of that $1,000.00 check last year did she similarly follow up by contacting the Tax Claim Bureau for verification that that was enough to keep it from the 2013 sale?

A. No, sir.

H.T. at 69; R.R. at 24.

On cross examination, Roland again testified:

A. I had no contact with her [Vignola] in '13. She sent a money order for $1,000.00 in '13.

Q. And upon receipt of that money order was there any contact with her to say: Golly, Ned, you need to send a little more?

A. There was no contact.

H.T. at 70–71; R.R. at 24–25.

The trial court concluded that the Tax Claim Bureau complied with statutory notice requirements of Section 602 of the RETSL, 72 P.S. § 5860.602. The trial court further concluded that Vignola's partial payment did not operate to stay the Upset Sale because Vignola never entered into a written agreement with the Tax Claim Bureau to remove the Property from the tax sale list and she did not make any arrangements to pay the delinquent taxes in full within one year pursuant to Section 603 of the RETSL, 72 P.S. § 5860.603.[2] The trial court explained its rationale at the hearing:

---

1. Act of July 7, 1947, P.L. 1368, *as amended.*

2. Section 603 of the Real Estate Tax Sale Law provides that a scheduled tax sale may be stopped by the taxpayer's payment of twenty-five percent of the amount of taxes due and agreement to an installment plan for the remainder. Section 603 states, in relevant part, as follows:

 Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, ... (2) enter into an agreement, in writing, with the bureau to stay the

sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each

[E]ven though there's a partial payment here which I believe is above the 25 percent that was due on the tax lien. There's no allegation here that there was any written agreement.... (Emphasis added.)

[T]he case that I found was on point on here is a Commonwealth Court case. It's in regards to an upset tax sale in Montgomery County. It's an Appeal of William Dodge. It's a 1985 case dealing with this, with this section. And the citation to it is [92 Pa.Cmwlth. 281], 499 A.2d 12. Again, a 1995(sic) Commonwealth Court case.

And in that case it's somewhat similar facts. *There was no actual payment made.* But the Common Pleas Judge in that case, assuming that he felt bad for the original owner overturned the tax sale even though there was no compliance with the statutory requirements that there be a payment, and that there be a writing, and a written agreement. And the Commonwealth Court I think in pretty, pretty hard terms—let me find where that language is. They state that 'The Bureau had no authority to extend the time during which the taxpayer could comply with the requirements of Section 603.' ... And I think *even given the fact that she did make a payment of, of the 25 percent or more there is no written agreement.* And there was (sic) no terms as to the full payment. (Emphasis added.)

H.T. at 82–85; R.R. at 26–27.

■ On appeal[3], Vignola contends that the trial court erred when it denied her objections to the Upset Sale because (1)

instalment. So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.
72 P.S. § 5860.603.

**3.** This Court's review is limited to determining whether the trial court abused its discre-

*Appeal of Dodge,* 92 Pa.Cmwlth. 281, 499 A.2d 12 (1985), is distinguishable insofar as the payment in that case was made after the tax sale had already occurred; (2) the Tax Claim Bureau did not notify her of the tax due prior to the Upset Sale; and (3) she reasonably relied on the actions of the Tax Claim Bureau in the past year and she followed the same procedure in 2013 by making a partial payment before the Upset Sale. This Court agrees that the trial court erred when it denied Vignola's objections to the Upset Sale.

■ The undisputed evidence showed that Vignola made a $1,000.00 payment to the Tax Claim Bureau *before* the Upset Sale.

At that point, the Tax Claim Bureau had an affirmative duty to advise Vignola of her option to enter into an installment payment plan under Section 603 of the RETSL, 72 P.S. § 5860.603.

This Court has repeatedly held that where an owner has paid at least twenty-five percent of the taxes due, the tax authority is required to inform the owner of the option to enter into an installment agreement and that a failure to do so is a violation of the owner's due process rights. *Moore v. Keller,* 98 A.3d 1, 5 (Pa.Cmwlth. 2014); *Reilly v. Susquehanna Cnty. Tax Claim Bureau,* 904 A.2d 49, 53 (Pa. Cmwlth.2006); *York v. Roach,* 163 Pa. Cmwlth. 58, 639 A.2d 1291 (1994); *Darden v. Montgomery Cnty. Tax Claim Bureau,* 157 Pa.Cmwlth. 357, 629 A.2d 321, 323–24 (1993); *In re Upset Sale of Properties,* 126 Pa.Cmwlth. 280, 559 A.2d 600 (1989).

■ The Tax Claim Bureau highlighted through Roland's testimony that, after she

tion, rendered a decision with lack of supporting evidence or clearly erred as a matter of law. *Krumbine v. Lebanon County Tax Claim Bureau,* 153 Pa.Cmwlth. 457, 621 A.2d 1139 (1993).

made the $1,000.00 payment Vignola did *not* follow up by contacting the Tax Claim Bureau for verification that the payment was enough to remove the Property from the 2013 Upset Sale. However, it is not the taxpayer's burden to request an installment agreement. *In re Consolidated Return of Tax Claim Bureau of County of Beaver from August 16, 2011 Upset Sale for Delinquent Taxes,* 105 A.3d 76, 82 (Pa. Cmwlth.2014).

 To satisfy due process, the tax claim bureau must notify a taxpayer of her rights under Section 603 *after* the receipt in excess of twenty-five percent of the outstanding delinquency. *In re Consolidated Return of Tax Claim Bureau of County of Beaver,* 105 A.3d at 83. A reference to Section 603 in the Notice and Return sent to a taxpayer before a payment is received does not satisfy the tax claim bureau's obligation to offer an installment plan. *Darden,* 629 A.2d at 323.

██ Here, the record shows that Vignola paid $1,000.00 in August 2013, prior to the September 30, 2013, Upset Sale, for delinquent 2012 taxes, and that her outstanding balance was $1,638.40. Accordingly, at the time the Property was listed for Upset Sale, Vignola had paid approximately thirty-eight percent of the taxes owed as of 2013. The Tax Claim Bureau's witnesses admitted that no one contacted Vignola to present her with the option of an installment plan to pay the remaining balance. This omission violated the RETSL as well as Vignola's due process. *In re Consolidated Return of Tax Claim Bureau of County of Beaver,* 105 A.3d at 83.

The trial court mistakenly focused on the fact that there was no written agreement between Vignola and the Tax Claim Bureau, even though there was a partial payment made prior to the Upset Sale. The case relied on by the trial court is inapposite. In *Appeal of William Dodge,* involved a situation where a tax claim bureau voided an upset sale that had taken place based on the verbal assurances of taxpayers that they would make an installment payment and enter into an agreement.

There, a property owned by Tracy and Esther Moody (Moodys) was sold to William Dodge (Dodge) at an upset sale. Immediately *after* the upset sale, the Moodys offered to make an installment payment of $100.00. The Montgomery County Tax Claim Bureau informed the Moodys that the upset sale would be voided if they promptly paid twenty-five percent of the taxes and entered into an agreement to pay the balance. The Moodys did so three days later. The upset sale purchaser filed exceptions to the tax claim bureau's consolidated return for the upset sale. On appeal, this Court found that since the tax claim bureau had no authority to extend the time during which a taxpayer could comply with the requirements of Section 603 of the RETSL, 72 P.S. § 5860.603, which affords relief to taxpayers who act *prior to the date of any scheduled sale.* Key to this Court's holding was the fact that the twenty-five percent installment payment and written agreement were entered into *after the upset sale.*

Here, unlike in *Appeal of Dodge* a partial payment was made *before* the upset sale. That is the critical factor which triggers the tax claim bureau's duty to inform the taxpayer of the right to enter into a written agreement. Here, the trial court focused on the lack of a written agreement despite the fact that Vignola paid thirty-eight percent of the outstanding balance before the upset sale. This was error. The fact that there was no written agreement was the fault of the Tax Claim Bureau because it failed to advise Vignola of her option to enter into a written agreement to make installment payments on the balance.

This Court concludes that the trial court erred as a matter of law when it denied Vignola's objections to the Upset Sale when the record reflected that the Bureau failed to offer Vignola, who paid well in excess of twenty-five percent of the taxes due, the opportunity to enter into a written installment agreement.

Vignola also argues that the Upset Sale was void because the Tax Claim Bureau failed to comply with the notice requirements of Section 602 of RETSL, 72 P.S. § 5860.602. Specifically, Vignola asserts that the Tax Claim Bureau failed to properly post the Property. As this Court has determined that the trial court erred as a matter of law on the grounds discussed above, we need not address Vignola's other argument.

The order of the trial court is reversed.

### ORDER

AND NOW, this 30th day of March, 2015, the order of the Bedford County Court of Common Pleas in the above-captioned matter is hereby REVERSED.