IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of The Clinton County  :
Tax Claim Bureau Sale of              :
September 27, 2021                     :
                                      :   No. 714 C.D. 2022
Appeal of: Joseph John Thomas          :   Submitted: April 14, 2023


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: August 25, 2023

          Joseph John Thomas (Thomas) appeals, pro se, from the Clinton County (County) Common Pleas Court's (trial court) March 21, 2022 order denying his Petition for Special Relief (Petition). Thomas presents three issues for this Court's review: (1) whether the County Tax Claim Bureau (Bureau) was required to and/or did comply with the additional notice requirements of Section 607.1a of the Real Estate Tax Sale Law (RETSL);[1] (2) whether the trial court erred by not finding a defect in personal service; and (3) whether Thomas should have been afforded the opportunity to enter into an installment agreement to pay the outstanding taxes. After review, this Court affirms.


**Background**

          Thomas resides in the County at 410 Canal Street, Flemington, Pennsylvania (Property). On August 25, 2021, County Deputy Sheriff Derek Hoke

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a.

(Deputy Hoke) personally served Thomas with a copy of the Notice of Public Sale identifying and confirming that the Property would be exposed at public sale at 2 Piper Way, Suite 124, Lock Haven, Pennsylvania, at 10:00 a.m. on September 27, 2021. Deputy Hoke obtained Thomas's signature during personal service. Deputy Hoke also posted the Notice of Public Sale on the Property. In addition, the Bureau mailed a Ten-Day Notice of Sale (Ten-Day Notice) to Thomas on September 8, 2021.[2] *See* Original Record Notes of Testimony, Mar. 10, 2022 (N.T.) Bureau Ex. 1 at 6. The Ten-Day Notice reinforced the details contained in the Notice of Public Sale, and specified: "The approximate upset price for which the [P]roperty shall be sold is $1,249.51. The sum of $511.89 for the 2019 or prior delinquent taxes will remove the [P]roperty from the sale, if paid before the date of sale." *Id*. (all caps omitted). The Property was sold to a successful bidder on September 27, 2021.

On February 16, 2022, Thomas filed the Petition in the trial court setting forth his exceptions and seeking to set aside the upset tax sale. The trial court held a hearing on March 10, 2022. On March 21, 2022, the trial court overruled Thomas's exceptions and denied the Petition. Thomas appealed to the Pennsylvania Superior Court, which transferred the appeal to this Court.[3]

## Discussion

Thomas first argues that the tax sale should be set aside because the Bureau failed to meet the additional notice requirements of Section 607.1a of the RETSL. Specifically, Thomas claims that Section 607.1a of the RETSL should have been triggered because the Ten-Day Notice was returned to the Bureau unsigned.

---

[2] The trial court notes in its opinion that the Ten-Day Notice was sent September 7, 2021. *See* Trial Ct. Op. at 2. However, the Ten-Day Notice is dated September 8, 2021. *See* Original Record Notes of Testimony, Mar. 10, 2022, Bureau Ex. 1 at 6.

[3] "Our review in tax sale cases is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence." *In re Balaji Invs., LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016).

2

The Bureau rejoins that the additional notice requirements of Section 607.1a of the RETSL do not apply because the trial court found, based upon competent evidence, that Thomas had received actual notice of the sale when he was personally served on August 25, 2021.

Section 607.1a(a) of the RETSL states:

> **When any notification of a pending tax sale** or a tax sale subject to court confirmation is required to be mailed to any owner, . . . and such mailed notification **is either returned without the required receipted personal signature** of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee **or is not returned or acknowledged at all**, then, **before the tax sale can be conducted or confirmed**, **the [B]ureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him**. The [B]ureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notification shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in [the RETSL].

72 P.S. § 5860.607a(a) (emphasis added).

This Court has held: "The [RETSL] requires a tax claim bureau to give notice to the delinquent taxpayer before his property can be sold in satisfaction for overdue taxes." *Clemmer v. Fayette Cnty. Tax Claim Bureau*, 176 A.3d 417, 420 (Pa. Cmwlth. 2017). Additionally, "notice provisions are to be strictly construed, and [] strict compliance with such provisions is necessary to guard against the deprivation of property without due process and if any one [sic] is defective, the sale

3

is void." *Donofrio v. Northampton Cnty. Tax Claim Bureau*, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002). However, this Court has held that a finding of actual notice can waive strict compliance with the RETSL's statutory notice provisions. *See Donofrio*; *Sabbeth v. Tax Claim Bureau of Fulton Cnty.*, 714 A.2d 514 (Pa. Cmwlth. 1998).

In *Sabbeth*, the tax claim bureau admitted that it did not strictly comply with the statutory notice requirements, but argued on appeal that the appellee had actual notice of the sale because one of the appellee's employees signed for the notice and placed it on the appellee's desk where the appellee was accustomed to receiving mail. The appellee did not read the notice until the day before the tax sale, 53 days after her employee placed it on her desk. The tax claim bureau argued that the appellee had actual notice because actual notice requires proof that the notice was actually received, not proof that it was actually read. This Court agreed with the tax claim bureau, finding that as a result of the appellee having actual notice of the tax sale, strict compliance with the statutory provisions was waived. Moreover, in *Donofrio*, when the appellant admitted to receiving notice of a pending tax sale, and acknowledged receipt of the notice of unpaid taxes, this Court affirmed the trial court's reasoning that the appellant had actual notice of the tax sale. The *Donofrio* Court ruled in the tax claim bureau's favor, despite acknowledging that the RETSL's formal notice requirements were not met.

Here, Thomas asserts that the Bureau did not make reasonable efforts to provide him with notice of the tax sale pursuant to Section 607.1a of the RETSL because he did not receive the Bureau's Ten-Day Notice and it was returned to the Bureau unsigned. However, the trial court concluded that "the [Bureau] had absolutely no reason to doubt that [Thomas] had received notice of the pending upset tax sale." Trial Ct. Op. at 3. Therefore, the issue before this Court is whether there was substantial evidence in the record to support the trial court's conclusion that Thomas had actual notice of the tax sale.

4

The *Sabbeth* Court defined *actual notice* as

> notice expressly and actually given, and **brought home to the party directly**. The term "actual notice," however, is generally given a wider meaning as embracing two classes, express and implied; the former includes all knowledge of a degree above that which depends upon collateral inference, or which imposes upon the party the further duty of inquiry; the latter imputes knowledge to the party because he is shown to be conscious of having the means of knowledge. In this sense[,] **actual notice is such notice as is positively proved to have been given to a party directly and personally**, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.

*Id*. at 517 (quoting Black's Law Dictionary 1061-62 (6th ed. 1990) (emphasis added)).

Here, the trial court made the following factual findings: (1) Deputy Hoke served Thomas; (2) Deputy Hoke presented Thomas with the Notice of Public Sale; and (3) Thomas signed the Notice of Public Sale and admitted to the trial court that he signed it. Thomas's signature and admission were substantial evidence to support the trial court's conclusion that Thomas received the Notice of Public Sale directly and personally. *See Sabbeth*. Accordingly, Thomas had actual notice of the tax sale.

Notwithstanding, Thomas claims that the trial court erred by not finding a defect in the personal service. Specifically, Thomas contends that he "was handed a paper to sign and once he signed [it], [Deputy Hoke] walked away with whatever paper was signed, not leaving him with anything." Thomas Br. at 11. The Bureau rejoins that Thomas is essentially asking this Court to reweigh the trial court's credibility determinations.

5

Because Thomas owned and occupied the Property at the time Deputy Hoke served him, Section 601(a)(3) of the RETSL[4] applies. Section 601(a)(3) of the RETSL provides:

> No **owner-occupied property** may be sold unless the [**B**]**ureau** has given the owner occupant **written notice of such sale** at least **ten** (**10**) **days** prior to the date of actual sale by **personal service by the sheriff or his deputy** or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. **The sheriff or his deputy shall make a return of service to the** [**B**]**ureau**, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the [B]ureau written proof of service, **setting forth the name of the person served**, **the date and time and place of service**, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the [B]ureau to make such personal service, the [B]ureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. § 5860.601(a)(3) (emphasis added). Moreover, this Court has held: "The trial court, as the finder of fact, has exclusive authority to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence presented." *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006).

In the instant matter, the trial court found that, on August 25, 2021, Deputy Hoke "personally served [Thomas] with a copy of the Notice of Public Sale identifying and confirming that the [P]roperty would be exposed at public sale at 2 Piper Way, Suite 124, Lock Haven, Pennsylvania, at 10:00 a.m. on September 27, 2021." Trial Ct. Op. at 3. Deputy Hoke served Thomas well over 10 days before the Property's sale. Deputy Hoke returned the Notice of Public Sale to the Bureau

---

[4] 72 P.S. § 5860.601(a)(3).

6

after Thomas signed it. Thomas admitted to signing it. Based on these factual findings which are supported by the record regarding personal service, and given that the trial court has exclusive authority to weigh the evidence and draw reasonable inferences therefrom, the Bureau satisfied Section 601(a)(3) of the RETSL's notice requirements.

Lastly, Thomas argues that he should have been afforded the opportunity to enter into an installment agreement to pay the taxes in May 2021. Specifically, Thomas contends that the Bureau violated his due process rights by failing to inform him of that option pursuant to Section 603 of the RETSL[5] after he paid $500.00 towards his 2019 taxes on May 30, 2021. The Bureau retorts that Thomas waived this argument by not raising it before the trial court. Further, the Bureau asserts that even if Thomas did not waive this argument, it is not supported by the record evidence.

Section 603 of the RETSL provides, in relevant part:

> Any **owner** or lien creditor of the owner **may**, **at the option of the [B]ureau**, **prior to the actual sale**, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) **enter into an agreement**, **in writing**, **with the [B]ureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date**, as provided by [the RETSL], and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment.

_____

[5] 72 P.S. § 5860.603.

72 P.S. § 5860.603 (emphasis added).

> In interpreting Section 603 of the RETSL,
>
> [t]his Court has repeatedly held that where an owner has paid at least [25%] of the taxes due, the tax authority is required to inform the owner of the option to enter into an installment agreement and that a failure to do so is a violation of the owner's due process rights.

*In re Sale by Tax Claim Bureau of Bedford Cnty. of Tax Parcel G.14-0.00-007*, 112 A.3d 685, 688 (Pa. Cmwlth. 2015).

Pennsylvania Rule of Appellate Procedure 302(a) provides: "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In *Thayer v. Tax Claim Bureau of Bucks County*, 701 A.2d 808 (Pa. Cmwlth. 1997), this Court held that a party could not raise the issue of a tax installment agreement pursuant to Section 603 of the RETSL because, at trial, the party did not specify that certain agreements existed and did not introduce the agreements into the record as evidence. Additionally, "[w]hen issues are not properly raised and developed in briefs, [and] when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." *Commonwealth v. Feineigle*, 690 A.2d 748, 751 n.5 (Pa. Cmwlth. 1997) (quoting *Wicker v. Civ. Serv. Comm'n*, 460 A.2d 407, 408 (Pa. Cmwlth. 1983)).

Thomas argued to the trial court that he made a $500.00 payment to the Bureau in 2021 that he believed covered his taxes and entered him into an arrangement with the Bureau to pay the rest. Thomas testified that after he made the $500.00 payment on May 30, 2021, he was "under the impression that [he] had an arrangement with [the Bureau] [and] that [he] was good because taxes run from May to May[.]" N.T. at 13-14.

Additionally, in a written objection presented to the trial court and submitted into evidence during the March 10, 2022 hearing, Thomas wrote:

8

> The first objection I would make is that I was, back in May [2021], I paid $500.00 and I thought I had an arrangement to pay the rest. Period. I don't know where that went wrong. I have a paper with scheduled payments, that go way past September. In July[,] I was still getting a regular bill. The [B]ureau gave me a copy of my file and there is no mention of the agreement, no notes at all.

N.T. Thomas Ex. 1 at 1.

Thomas's argument on appeal that the Bureau *should have informed him* of his ability to enter into an installment agreement is a different argument than his argument to the trial court that the sale should be set aside because *he believed* he had an arrangement with the Bureau. He did not raise the issue of the Bureau violating Section 603 of the RETSL to the trial court.[6] This Court is constrained to review only those issues that were raised before the trial court. *See Thayer*; *see also In re Est. of Marra v. Tax Claim Bureau of Lackawanna Cnty.*, 95 A.3d 951 (Pa. Cmwlth. 2014). Accordingly, this issue is waived.

Even if this issue was not waived, there is insufficient evidence in the record to support Thomas's argument. Similar to *Thayer*, Thomas did not introduce any evidence of the existence or purpose of his supposed May 30, 2021 payment to the Bureau to the trial court. Additionally, Thomas did not offer any proof of a specific installment agreement with the Bureau. Nor is there a receipt of his alleged May 30, 2021 payment in the record. Although Thomas mentioned that he was under the impression of having an arrangement with the Bureau, he did not produce the "paper with scheduled payments" that he referenced in his written objection. N.T. Thomas Ex. 1 at 1. Accordingly, Thomas' argument is not supported by the record evidence.

---

[6] *See* N.T. Thomas Ex. 1 at 1-3.

9

**Conclusion**

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of The Clinton County :
Tax Claim Bureau Sale of :
September 27, 2021 :
: No. 714 C.D. 2022
Appeal of: Joseph John Thomas :

## O R D E R

AND NOW, this 25th day of August, 2023, the Clinton County Common Pleas Court's March 21, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge